OPINION


No. 04-08-00479-CV



MILESTONE POTRANCO DEVELOPMENT, LTD.,


Appellant



v.



CITY OF SAN ANTONIO,


Appellee



From the 131st Judicial District Court, Bexar County, Texas


Trial Court No. 2005-CI-05559


Honorable Janet Littlejohn, Judge Presiding



Opinion by: Sandee Bryan Marion, Justice

 

Sitting: Sandee Bryan Marion, Justice

 Phylis J. Speedlin, Justice

 Marialyn Barnard, Justice 


Delivered and Filed: May 27, 2009


AFFIRMED



 Milestone Potranco Development, Ltd. appeals the trial court's judgment declaring that the
City of San Antonio's Tree Preservation Ordinance and Streetscape Tree Planting Standards (the
"Tree Ordinance") are enforceable against Milestone's property which is located in the City's
extraterritorial jurisdiction ("ETJ"). Milestone asserts that the City's limited authority to enforce its
ordinances beyond its corporate limits does not entitle the City to extend the Tree Ordinance to the
City's ETJ. We affirm the trial court's judgment.

STANDARD OF REVIEW

 The question presented by Milestone on appeal is whether sections 212.002 and 212.003 of
the Texas Local Government Code ("Code") authorize the City to enforce the Tree Ordinance in the
City's ETJ. Statutory construction is a legal question we review de novo. City of Rockwall v.
Hughes, 246 S.W.3d 621, 625 (Tex. 2008). In construing statutes, our primary objective is to
ascertain the Legislature's intent as expressed by the language of the statute. State, Texas Parks and
Wildlife Dept. v. Shumake, 199 S.W.3d 279, 284 (Tex. 2006). "We use definitions prescribed by the
Legislature and any technical or particular meaning the words have acquired." City of Rockwall, 246
S.W.3d at 625; see also Tex. Gov't Code Ann. § 311.011(b) (Vernon 2005). Otherwise, we use
the plain language of the statute's words unless a contrary intention or absurd result is apparent from
the context. City of Rockwall, 246 S.W.3d at 625-26. We presume the Legislature intended a just
and reasonable result in enacting a statute. Id. at 626; see also Tex. Gov't Code Ann. § 311.021(3)
(Vernon 2005).DISCUSSION

 The City contends it adopted the Tree Ordinance under the authority granted in
section 212.002 of the Code, which states: 

 After a public hearing on the matter, the governing body of a municipality
may adopt rules governing plats and subdivisions of land within the municipality's
jurisdiction to promote the health, safety, morals, or general welfare of the
municipality and the safe, orderly, and healthful development of the municipality.


Tex. Loc. Gov't Code Ann. § 212.002 (Vernon 2008) (emphasis added). The City further asserts
it has the authority to enforce the Tree Ordinance in the City's ETJ pursuant to section 212.003 of
the Code, which states, in pertinent part, as follows: 

 (a) The governing body of a municipality by ordinance may extend to the
extraterritorial jurisdiction of the municipality the application of municipal
ordinances adopted under Section 212.002 and other municipal ordinances relating
to access to public roads or the pumping, extraction, and use of groundwater by
persons other than retail public utilities, as defined by Section 13.002, Water Code,
for the purpose of preventing the use or contact with groundwater that presents an
actual or potential threat to human health. However, unless otherwise authorized by
state law, in its extraterritorial jurisdiction a municipality shall not regulate:


 (1) the use of any building or property for business, industrial, residential,
or other purposes; . . .


Id. at § 212.003 (emphasis added); see also City of Austin v. Jamail, 662 S.W.2d 779, 782 (Tex.
App.--Austin 1983, writ dism'd) (noting municipality must have specific statutory authority to
enforce ordinances in the municipality's ETJ).

 Milestone argues the Tree Ordinance cannot be enforced in the City's ETJ because: (1) the
Tree Ordinance is not a "rule governing plats and subdivisions of land" and, therefore, cannot be an
ordinance adopted under section 212.002 of the Code; (2) the Tree Ordinance is overly broad in its
application; or (3) the Tree Ordinance regulates the use of property which the City is prohibited from
regulating in the City's ETJ by section 212.003(a)(1) of the Code.

A. "Rules Governing Plats and Subdivisions of Land"

 We first must determine whether the Tree Ordinance can be characterized as a rule
"governing plats and subdivisions of land" that a municipality can adopt under section 212.002 of
the Code. 

 Milestone asserts the Tree Ordinance cannot be so categorized because tree preservation is
not one of the purposes for requiring municipal approval of plats and subdivisions. Milestone
contends platting and subdivision ordinances are limited to those ordinances that regulate "basic
infrastructure." Based on its belief that the Tree Ordinance is "a purely aesthetic regulatory scheme"
that does not regulate "basic infrastructure," Milestone argues that the Tree Ordinance is not a rule
"governing plats and subdivisions of land." We disagree.

 As previously noted, section 212.002 of the Code authorizes a municipality to adopt certain
"rules governing plats and subdivisions of land." Tex. Loc. Gov't Code Ann. § 212.002 (Vernon
2008). Section 212.002 describes the "rules governing plats and subdivisions of land" that a
municipality is authorized to adopt as rules that "promote the health, safety, morals, or
general welfare of the municipality and the safe, orderly, and healthful development of the
municipality." Id. Moreover, the Texas Supreme Court has noted that the purpose of platting and
subdivision regulations is to "ensure that subdivisions are safely constructed and to promote the
orderly development of the community." City of Round Rock v. Smith, 687 S.W.2d 300, 302 (Tex.
1985). Platting ensures "adequate provisions have been made for streets, alleys, parks and other
facilities indispensable to the particular community affected." Lacy v. Hoff, 633 S.W.2d 605, 609
(Tex. App.--Houston [14th Dist.] 1982, writ ref'd n.r.e.). 

 In this case, the Tree Ordinance contains a statement of purpose explaining the objectives or
purposes the ordinance is intended to accomplish. San Antonio, Tex., Unified Development
Code, § 35.523 (2006). These purposes or objectives include:

  To preserve trees as an important public resource enhancing the quality of life and
the general welfare of the city and enhancing its unique character and physical,
historical and aesthetic environment.


  To encourage the preservation of trees for the enjoyment of future generations.


  To encourage the preservation of trees to provide health benefits by the cleansing
and cooling of the air and contributing to psychological wellness.


  To encourage the preservation of trees to provide environmental elements by adding
value to property, and reduction of energy costs through passive solar design utilizing
trees.


  To encourage the preservation of trees to provide environmental elements necessary
to reduce the amount of pollutants entering streams and to provide elements crucial
to establishment of the local ecosystem.

 

  To provide tree preservation requirements and incentives to exceed those require-ments that encourage the maximum preservation of trees.


  To promote and protect the health, safety and welfare of the public by creating an
urban environment that is aesthetically pleasing and that promotes economic
development through an enhanced quality of life.


Id. We believe the Tree Ordinance is more than simply an aesthetic regulation. Instead, the Tree
Ordinance was intended to, and does, regulate tree preservation to promote the health of the
municipality and the orderly and healthful development of the community. See Tex. Loc. Gov't
Code Ann. § 212.002 (Vernon 2008); City of Round Rock, 687 S.W.2d at 302. Therefore, we
conclude that the Tree Ordinance is a rule "governing plats and subdivisions of land" that the City
was authorized to adopt under section 212.002 of the Code.

B. Overly Broad 

 In the alternative, Milestone claims that even if the Tree Ordinance is a rule "governing plats
and subdivisions of land," the Tree Ordinance is overly broad because it contains provisions
unrelated to the activities of platting and subdividing land. Milestone asserts the Tree Ordinance
applies not only to those wishing to plat and subdivide property but also to every person who simply
wants to reduce the number of trees on his or her property. To support this contention, Milestone
quotes language from the Tree Ordinance that states the Tree Ordinance "regulates all activities that
result or may result in the removal of protected or heritage trees."

 In reviewing the Tree Ordinance, however, we are required to consider the ordinance as a
whole and in the context of the entire Unified Development Code. Tex. Dep't of Transp. v. City of
Sunset Valley, 146 S.W.3d 637, 642 (Tex. 2004). Reviewing the Tree Ordinance under this standard,
we conclude the Tree Ordinance does not extend as broadly as Milestone contends.

 All of the City of San Antonio's ordinances are codified in the Code of Ordinances. The
former Chapter 35 of the Code of Ordinances is now codified separately as the Unified Development
Code. The Tree Ordinance is located in Article V, Division 5 of the Unified Development Code. 
San Antonio, Tex., Unified Development Code, § 35.523 (2006).

 The Executive Summary to the Unified Development Code states, "The San Antonio Unified
Development Code ("UDC") establishes standards and procedures for new development in the city." 
San Antonio, Tex., Unified Development Code, vii (2006). The Executive Summary notes
that Article III of the UDC relates to zoning regulations and emphasizes, "It is important to note that
the zoning restrictions in Article III do not apply to property in the city's extraterritorial jursidiction.
. . . [Landowners in the extraterritorial jurisdiction] are, however, subject to the subdivision
regulations (Article IV, Division 4) and the requirements of Article V which govern infrastructure
improvements, natural resource protection, and parking and storage." Id. at vii-viii. Finally, the
Executive Summary states, "The standards for land development are consolidated in Development
Standards (Article V)." Id. at ix. Therefore, the overall structure of the UDC demonstrates that
Article IV and V, which are applicable to the City's ETJ, are intended to be limited in their
application to the subdivision of land and land development.


 In addition, as previously noted, the Tree Ordinance is contained in Article V entitled
"Development Standards." San Antonio, Tex., Unified Development Code, Art. V (2006). 
Section 35-501(a) clarifies that the provisions of Article V apply only to an application for
development approval. Id. at § 35-501(a). This limited application to development is further
reflected in the procedural requirements for submitting an application for development approval
which only require developers filing a major or minor plat application to also provide a tree affidavit
or tree permit application. (1)
 San Antonio, Tex., Unified Development Code, app. B, Table B101-1(G)(14) (2006). Therefore, unless an individual is seeking approval for a major or minor plat
application, the UDC does not require the individual to provide a tree affidavit or tree permit
application.

 The Tree Ordinance itself also contains exceptions demonstrating the City's intent that the
ordinance's application is limited to subdivisions or similar land development. For example, the
Tree Ordinance does not apply to "[t]rees located on property on which construction of
single-family, two-family or three-family residential dwelling units has been completed." Id. at § 35-523(a)(4)(C). Therefore, the Tree Ordinance does not purport to regulate property on which the
construction of a home is complete.

 Finally, when the City amended the UDC to include the Tree Ordinance, the caption of the
amendment referred to the Tree Ordinance as a "subdivision regulation." San Antonio, Tex.,
Ordinance 85262 (Dec. 5, 1996). The memorandum arranging the public hearing on the Tree
Ordinance also described the ordinance as a regulation for the preservation of trees in conjunction
with commercial and residential development activities. See Memorandum from Rebecca Waldman,
Acting Director of Planning; Gene Camargo, Director of Building Inspections to Mayor and City
Council (Dec. 5, 1996) (setting the date for the statutorily required public hearing to discuss the Tree
Ordinance prior to its adoption by the City). 

 Therefore, after considering the Tree Ordinance as a whole and in the context of the UDC,
we conclude the Tree Ordinance was intended to, and does, govern only plats and subdivisions of
land. As a result, the Tree Ordinance is not overly broad.

C. Section 212.003(a)(1) Land Use Exception

 Because the Tree Ordinance was properly adopted pursuant to section 212.002 of the Code,
the City may extend the Tree Ordinance to the City's ETJ under section 212.003 of the Code unless
one of its exceptions apply. Milestone argues the Tree Ordinance should be treated as a prohibited
"land use" regulation under subsection 212.003(a)(1), which contains an exception that prohibits a
municipality from regulating, "the use of any building or property for business, industrial, residential,
or other purpose." Tex. Loc. Gov't Code Ann. § 212.002 (Vernon 2008). We disagree that the
Tree Ordinance regulates the use of property as that term is used in section 212.003(a)(1) for several
reasons.

 First, the language used in section 212.003 of the Code to describe the exceptions to
extending ordinances to the ETJ demonstrates that the regulations the Legislature intended to except
are those relating to zoning. Section 211.003 of the Code, which describes the types of zoning
regulations a municipality may adopt, lists regulations pertaining to:

 (1) the height, number of stories, and size of buildings and other structures;


 (2) the percentage of a lot that may be occupied; 


 (3) the size of yards, courts, and other open spaces;


 (4) population density;


 (5) the location and use of buildings, other structures, and land for business,
residential, or other purposes; and


 (6) the pumping, extraction, and use of groundwater....


Tex. Loc. Gov't Code Ann. § 211.003 (Vernon 2008). Comparing this language to the list of items
a municipality cannot regulate in the ETJ under section 212.003 of the Code readily reveals their
similarities as section 212.003 prohibits a municipality from regulating:

 (1) the use of any building or property for business, industrial, residential, or other
purpose;


 (2) the bulk, height, or number of buildings constructed on a particular tract of land;


 (3) the size of a building that can be constructed on a particular tract of land,
including without limitation any restriction on the ratio of building floor space to the
land square footage;


 (4) the number of residential units that can be built per acre of land; or


 (5) the size, type, or method of construction of a water or wastewater facility....


Tex. Loc. Gov't Code Ann. § 212.003(a) (Vernon 2008). The similarities between the zoning
ordinances a municipality may adopt under section 211.003 and the list of items a municipality is
prohibited from regulating under section 212.003, therefore, reveals the Legislature's intent to
prohibit a municipality from regulating zoning-type uses in the ETJ. 

 Additionally, the Legislature's intent to exclude only zoning-type regulations from the
regulations that a municipality can extend to its ETJ is even more apparent when we consider the
prior language used in section 212.003(a). When it was first codified, section 212.003 did not
contain any exceptions. Act of April 30, 1987, 70th Leg., R.S., ch. 149, §1, 1987 Tex. Gen. Laws
707, 969. During the 1989 legislative session, however, section 212.003 was first amended by S.B.
220 to provide, "However, a municipality may not impose zoning requirements, including those that
regulate the use of any building or property, in any area outside its corporate limits." Act of Feb. 8,
1989, 71st Leg., R.S., ch. 1, § 46, 1989 Tex. Gen. Laws 1, 49. Later that same session, section
212.003, as amended by S.B. 220, was further amended to prohibit a municipality from regulating
the first four items listed in the current statute. Act of May 29, 1989, 71st Leg., R.S., ch. 822, § 6,
1989 Tex. Gen. Laws 3770, 3775. From this progression of amendments, therefore, the Legislature
acknowledged that the type of regulations it intended to except from extending to the ETJ were
zoning regulations but the Legislature also wanted to specify the subject matter of the zoning
regulations it intended to except.

 Another indication that the uses of property a municipality is prohibited from regulating in
section 212.003 are zoning-type uses is the Legislature's amendments to the vested rights statutes. 
Chapter 245 of the Code recognizes a developer's vested rights and requires a regulatory agency to
consider approval or disapproval of an application for a permit, such as a subdivision plat, based on
regulations and ordinances in effect at the time the original application is filed. Tex. Loc. Gov't
Code Ann. §§ 245.001-245.007 (Vernon 2005). Similar to the extension of ordinances to the ETJ,
there also are exceptions to the vested rights statutes that recognize that some regulations are
applicable even if adopted or changed after the time the original application is filed. Id. at § 245.004. 
In 2005, the Legislature amended the exceptions to clarify that while zoning regulations are excepted
from the vested rights statutes, regulations governing tree preservation are not excepted. See Act of
April 27, 2005, 79th Leg., R.S., ch. 31, § 1, 2005 Tex. Gen. Laws 40, 41. The bill analysis noted that
although the vested rights statutes were created to protect the development rights of landowners from
the application of retroactive rulemaking by cities, statutory amendments were needed to curb the
"troubling rise in cities' attempts to circumvent the original intent of the statute." Bill Analysis, S.B.
574, 79th Leg., R.S. (2005). Accordingly, section 245.004 was being amended to provide that the
exception to vested rights did not apply to tree preservation regulations. Id. In adopting this
amendment, the Legislature was likening tree preservation ordinances to other land development
regulations that govern plats and subdivisions as opposed to zoning ordinances governing the use
of property.

 Finally, the distinctions made in the case law between zoning or use ordinances and platting
or subdivision regulations reveals that the Tree Ordinance does not regulate the "use" of property
as that term is used in section 212.003 of the Code. As one court has stated, "Zoning contemplates
the prohibition of certain physical uses of land" and "allows a municipality to create districts where
land uses are limited or restricted to specific enumerated purposes." Lacy, 633 S.W.2d at 609. 
Planning or platting, on the other hand, "contemplates adequate provision for orderly growth and
development." Id.; see also City of Round Rock, 687 S.W.2d at 302. In this case, the Tree
Ordinance does not regulate the physical use of the land or the specific purpose for which it is used
but regulates the manner in which trees must be preserved in developing the land for any use or
purpose.

 For the foregoing reasons, we conclude that the Tree Ordinance does not regulate the "use"
of property as that term is used in section 212.003(a)(1) of the Code. Accordingly, the City was
permitted to extend the Tree Ordinance to plats and subdivision development in the City's ETJ.

CONCLUSION

 We conclude the Tree Ordinance was properly adopted by the City under section 212.002 of
the Code, and the City was permitted to extend the Tree Ordinance to the City's ETJ pursuant to
section 212.003 of the Code. Accordingly, we affirm the trial court's judgment.


 Sandee Bryan Marion, Justice




1. The UDC defines a "minor subdivision" as "[a] subdivision involving four (4) or fewer lots fronting on
an existing street that does not involve (i) the creation of any new street, alleys or safety lanes; (ii) the extension of off-site utilities; or (iii) the installation of drainage improvements." San Antonio, Tex., Unified Development
Code, app. A, § 35-A101, UDC-A:39 (2006). A "major subdivision" is defined as "[a]ny subdivision other than a
minor subdivision." Id. at UDC-A:37.